**UNITED BROTHERHOOD OF CARPENTERS JOINERS OF AMERICA (AFL–CIO) and Frank Fiano, in his official capacity as Trustee of Tile, Finishers Union, Local No. 88 of the Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters International Union (AFL–CIO), Plaintiffs,**

**v.**

**TILE HELPERS UNION LOCAL 88, INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN; Tile Finishers Union, Local No. 88 of the Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters International Union (AFL–CIO); Tile Helpers Mortuary Fund; John Storey, individually and as Trustee of the Tile Helpers Mortuary Fund; William Gunther; Charles McKenna, individually and as Trustee of the Tile Helpers Mortuary Fund; and Charles Hill, individually and as Trustee of the Tile Helpers Mortuary Fund, Defendants.**

No. CV 89–3290.

United States District Court,
E.D. New York.

Sept. 25, 1992.

602

Cohen, Weiss and Simon (Jani K. Rachelson, Joseph J. Vitale, of counsel), New York City, and Jubelirer, Pass & Intrieri, P.C. (Joseph J. Pass, of counsel), Pittsburgh, Pa., for plaintiffs.

Vladeck, Waldman, Elias & Engelhard, P.C. (Seymour M. Waldman, of counsel), New York City, for defendants other than Local 88 TMT.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

This action concerns the disaffiliation of the members of a local union from its pre-

vious parent, the Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters International Union (AFL–CIO) (the "TMT International"). After the members of Tile Finishers Union Local No 88 (herein called "old Local 88") disaffiliated from the TMT International and became members of the International Union of Bricklayers & Allied Craftsmen (the "Bricklayers"), the "TMT International" merged into plaintiff United Brotherhood of Carpenters and Joiners of American (AFL–CIO) (the "Carpenters").

The defendants are the new local affiliated with the Bricklayers, now called Tile Helpers Union Local 88 (herein called "new Local 88"), as well as a Mortuary Fund, and former officers of old Local 88 now trustees of the Fund.

The Carpenters seek, in substance, to recover from defendants damages because of the transfer by old Local 88 of assets plaintiffs say it was obligated to turn over to the TMT International under the terms of its constitution.

Jurisdiction is based on Section 301(a) of the Labor–Management Relations Act, 29 U.S.C. § 185(a); Section 501(b) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 501; and 28 U.S.C. §§ 1331 and 1337.

By Memorandum and Order dated June 26, 1990, familiarity with which is assumed, this court held that the Carpenters, as successor to TMT International, had standing to bring this action.

Both sides now ask for summary judgment. The chief issue is whether old Local 88 properly transferred into a mortuary account assets that the Carpenters say should have been forfeited to the TMT International.

## I.

Most of the critical facts are not in serious dispute.

In 1987 the members of a number of the larger locals of TMT International, including old Local 88, having become dissatisfied with their parent, decided to leave and join the Bricklayers. *See e.g., Tile, Marble, Terrazzo, et al. v. Local 32*, 896 F.2d 1404 (3d Cir.1990) (Philadelphia and Harrisburg Local); *Tile, Marble, Terrazzo, et al. v. Ceramic Tile Finishers Union, Local 25*, 972 F.2d 738 (7th Cir.1992) (Chicago Local).

On September 10, 1987, the Executive Board of old Local 88 unanimously recommended to its members that they leave TMT International and join the Bricklayers and that Local 88 establish a mortuary account as soon as practicable in an amount not to exceed one hundred percent of the local's assets. The business manager of Local 88 then established a mortuary fund on October 6, 1987.

Some time following September 10, 1987 the President and Business Manager of Local 88 sent a special notice to its entire membership stating, among other things, that it was of the utmost importance that all members attend the October 7, 1987 regular monthly meeting. On that date 169 out of 243 active members attended the meeting and unanimously adopted a resolution authorizing the creation of a death benefit or mortuary account in an amount not to exceed 100% of the local's assets and appointing a Committee to oversee the account. The members then voted unanimously to leave the TMT International and join the Bricklayers.

The members at the meeting, followed by others in the succeeding weeks, also signed the Bricklayers' membership applications. Members of old Local 88 stopped paying dues to the Local and to TMT International. On October 8, 1987 the Bricklayers issued a charter for a local union, now new Local 88.

Pursuant to the resolution to establish a mortuary account, the Committee developed the terms of a death benefit plan, executed a Declaration of Trust that established an ERISA trust fund, adopted rules governing the plan, obtained an Employer Identification Number, and filed for and

obtained tax exempt status for the fund as a death benefit trust from the Internal Revenue Service. Out of funds remaining in old Local 88's account, the Committee paid to TMT International the September 1987 "per capita" payment due from its constituent Locals.

In May 1988 the TMT International named plaintiff Frank Fiano as a Trustee over old Local 88, which by then had no members.

On April 2, 1991 Fiano as Trustee and the Carpenters, as the successor international union to the TMT International, filed an amended complaint alleging that (a) old Local 88's dissolution and disaffiliation and its retention and transfer of assets violated the TMT International Constitution; (b) the defendants failed to abide by the terms imposed by the trusteeship; (c) the individual defendants breached their fiduciary duty under federal and state law; (d) the defendants converted old Local 88's assets; and (e) the defendants interfered with old Local 88's contractual relationships, including the TMT International constitution.

Plaintiffs' amended complaint seeks (1) a declaratory judgment establishing the validity of the trusteeship; (2) an injunction enforcing its terms; (3) the transfer of old Local 88's assets to plaintiffs; (4) compensatory damages in the amount of the money taken from old Local 88; (5) punitive damages; and (6) costs and fees.

## II.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants move for summary judgment dismissing the complaint, and plaintiffs cross-move for partial summary judgment as to their claim for old Local 88's assets, which they say include money held in the mortuary account, money used to pay for a car and to lease an office for the Local 88, and old Local 88's books and records.

There are two main issues before the court: (a) whether plaintiffs properly es-tablished the trusteeship and (b) whether the defendants properly used the assets of old Local 88 for a mortuary account and for a few other subsidiary purposes.

### (a) Trusteeship

■ The parties agree that TMT International appointed a trustee for old Local 88 *after all of the members had resigned from the Local.* Plaintiffs do not challenge the method or validity of these resignations.

After all the members resigned from old Local 88 it ceased to exist. Thus there was no longer a subordinate body for which to appoint a trusteeship. *Tile, Marble, Terrazzo, et al. v. Local 32, supra,* 896 F.2d at 1411–14. As that case held, since the TMT International Constitution required a minimum of seven members in order to maintain a local, and since the Constitution allowed the International to impose trusteeships only on subordinate bodies, its attempt to establish a trusteeship for Local 88 did not conform to its own Constitution and violated § 302 of the Landrum–Griffin Act. *Id.* at 1413.

This court agrees. The trusteeship was invalid.

### (b) Transfer of Assets to Mortuary Account

■ Plaintiffs concede that the TMT International Constitution permitted the members of its locals to disaffiliate, but say that the by-laws of old Local 88 did not authorize the transfer of its assets into a mortuary account in a deliberate attempt to evade the TMT International Constitution's forfeiture provision.

That Constitution provides in Article XI, Section 12, in relevant part, that in the event of dissolution or disaffiliation by a local, "then all property, books, records, papers, monies and documents" of the local "shall become the property of the International."

■ The TMT International Constitution is a contract between the International and its subordinate bodies. *United Assoc. of Journeymen v. Local 334,* 452 U.S. 615, 619, 101 S.Ct. 2546, 2549–50, 69 L.Ed.2d 280 (1981). Plaintiffs may bring a claim

for breach of contract if the transfer of assets by the officers of old Local 88 was improper.

Defendants say that the assets transferred from old Local 88's bank accounts to mortuary accounts were no longer a part of the local's assets when the dissolution took place and were therefore not subject to the Constitution's forfeiture provision. They argue that the TMT International Constitution did not prohibit the establishment of a mortuary trust and that old Local 88's by-laws permitted it.

While the Model Local By-Laws offered by TMT International to its locals expressly provide for mortuary funds, the TMT International Constitution itself does not state that the locals may create such funds.

Although old Local 88's by-laws did not expressly mention the establishment of a mortuary fund for death benefits, the court reads their general terms to authorize creation of such a fund.

Article VII, § 1 states:

The monies of this Local may be expended for the effectuation of the objects and purposes of the Local as set forth in these By–Laws. The membership at a meeting shall authorize or approve by resolution the expenditure of the funds or the use of the property of the Local for any of the said objects and purposes.

Article II, entitled "Objects and Purposes", includes among old Local 88's goals:

to promote the best interests of its members and their families; ... to promote health, welfare, pension, recreational and civic programs in the interest of its members and their families and the workers within its jurisdiction; ... and to do all things necessary and proper, permitted by law, to carry out these objects and purposes.

This language grants to the local members significant latitude in disbursing union funds. The court sees no reason why provisions authorizing expenditures to promote the interests of its members and their families should not be read to permit expenditures for death benefits. Death bene-

fits are amounts that are in "the interest" of a member's family.

The contention of plaintiffs that the court should invalidate the mortuary fund because its purpose was to evade the TMT International Constitution's forfeiture provision was rejected in *Tile, Marble, Terrazzo, et al. v. Local 32, supra.*

In that case the members of the local had the same purpose as did the members here. The Third Circuit upheld the creation of a mortuary fund because the local's constitution authorized the establishment of death benefits. *Tile, Marble, Terrazzo, et al. v. Local 32,* 896 F.2d at 1414–16. The same ruling was made by the Seventh Circuit in *Tile, Marble, Terrazzo, et al. v. Ceramic Tile Finishers Union, Local 52, supra.*

Nothing in the authorization in old Local 88's by-laws was in conflict with the TMT International Constitution, which contemplated that the locals had authority to provide for death benefits.

### (c) Procedures for Establishing the Mortuary Fund

■ Plaintiffs challenge the integrity of the procedures establishing the mortuary fund. They say that the membership vote was invalid because the funds had already been transferred the day before the October 7, 1987 meeting. Under old Local 88's by-laws, the membership could "authorize or approve by resolution" the use of the local's funds or property to achieve its purposes. Article VII, § 1. The Executive Board had "general charge of the Affairs of the Union" and had to report periodically to the membership. Article V, § 8.

The by-laws did not dictate prior approval but required only that the Board report to the members and that the members authorize or approve of the use of the local's funds. The unanimous vote by two-thirds of the entire membership the day following the transfer ratified the actions by the Executive Board.

■ Plaintiffs also contend that the mortuary fund is invalid because the Committee simply transferred funds from one account to another and did not complete the arrangements for the mortuary trust until

some time later. Even if plaintiffs' allegations are true, the failure by the officers to establish the trust fund within a specified time did not invalidate the vote by the general membership. That vote created the fund, and the officers were then bound to establish it. *Tile, Marble, Terrazzo, et al. v. Ceramic Tile Finishers Union, Local 25, supra.*

### (d) Alleged Transfer of Other Assets

Plaintiffs seek recovery of $10,302.80 paid by old Local 88, $1,052.80 as a deposit for two rental cars and $9,250 as advance rental for an office and meeting hall. Plaintiffs also ask for return of certain books and records of old Local 88.

These expenditures were made before the Local 88 members decided to leave TMT International and join the Bricklayers. The funds were therefore not in the local's treasury on October 7, 1987 when that decision was made.

The expenditures were apparently made after the individual officers had decided to recommend to all local's members that they join the Bricklayers. Thus, while the expenses were legitimate from the standpoint of the local, plaintiffs may have a claim against the individual officers named as defendants depending on what they reasonably knew about the way in which the membership would vote.

The issues as to these expenditures, and the disputed question of whether plaintiffs have received all the books and records of old Local 88 to which they are entitled, are referred to Magistrate Judge A. Simon Chrein to hear and report.

### III.

Defendants' motion for summary judgment is denied insofar as it relates to the expenditures of $10,302.80 and the return of books and records. These matters are referred to Magistrate Judge Chrein to hear and report. Defendants' motion is otherwise in all respects granted. Plaintiffs' motion for summary judgment is denied.

So ordered.